Good morning, Your Honors. Martin Guajardo on behalf of Pedro Villarrama Junio. If I may, Your Honor, I'd like to save two minutes. All right. Keep track of the time yourself. If I think of it, I'll try to remind you. Thank you. We would ask that the Court issue an order to remand this case to the Board of Immigration Appeals. We're all familiar with the facts, and I imagine that one of the salient points for us is what actually happened when Mr. Junio appeared for his inspection at the Immigration Port of Entry, and what happened at the time that he appeared for his application interview on the application for naturalization. What we know about this case is that sometime in February of 1986, his girlfriend was pregnant by about two months, and the family was insisting that before he left the Philippines that he would marry her. He had been to an interview at the American Embassy in December, and he was still single. And he was thinking, I'm leaving to the United States. His father had petitioned for him, and that petition had been pending for a number of years. So we know that up until the time that he was interviewed by the American Embassy, there was no fraud perpetrated, no fraudulent documents submitted to the Embassy. Everything was, if you will, on the up and up. What we do know is that in February, a few days before Valentine's Day, everyone back in the Philippines insisted that he marry his girlfriend, who was now about 90 days pregnant. He did so. He boards the plane, comes to the United States, and he is inspected and admitted as a permanent resident. So he comes in on what we call a P-2-2 visa. He is the unmarried son of a lawful permanent resident. But he was married. That is correct. He married in February of 1986. And when he entered and when he came into the United States in about February 15th or so, he reaffirmed his eligibility for naturalization as the single child of a U.S. citizen. Isn't that right? I think that the record of proceeding would indicate that when he arrived at the port of entry, there is a half page that must be signed or stamped by the inspector. And I believe that is found in Exhibit 5A. AR 251, isn't it? And what is interesting about that exhibit is that the instruction is that it should be read in the language of the applicant for admission. And there is no indication that it was read to him in his own language. What we do know from the judge's decision is that this individual had a limited English speaking ability. In fact, what we do know from the record of proceeding, and it is now Exhibit J, is that the application for naturalization was denied because he failed to demonstrate an ability to read, write, and speak in the English language. It seems to be a bit of a miscarriage for us to, if you will, put his feet to the fire in an interview for naturalization when we know from looking at the application that is found in Exhibit C, we know that someone else filled out the application. It was completed by another person, someone other than the applicant, and that individual signs off on that application. And we also know that at the time that he presented himself for admission, we know that there's a requirement that the agency speak to him, ask him the question in his own language, in Tagalog, if they have reason to believe that he's not understanding. Did he ever voluntarily admit the earlier civil wedding ceremony? Did he ever do that voluntarily? I believe that in 1994 he prepares a declaration or someone who was representing him at that point. My understanding of the record was that he asserted the religious ceremony from February of 88 as the date of his marriage and did so consistently until he was confronted by evidence of the earlier marriage. Am I wrong about that? I think that it's a short answer with all due respect. I think that that does not characterize factually. Nothing wrong with me being wrong. All right. That's the purpose of the argument. If I'm wrong about that, correct me. All right. I would ask the Court to take a look at the correspondence from the agency dated November 17, 1992, and this is issued simultaneously with the charging document that was used to bring him into deportation proceedings, so that the agency recognizes that he has the inability to read, write, and speak in the English language and then places him in proceedings. It would seem appropriate that if the agency is going to deny an application for a naturalization because this man has lied about a prior marriage and has represented that he married in 1988 in February after Valentine's Day, February of 1988, and he had a prior marriage right before Valentine's, February of 1986, that they should have denied his application and simply said, we are denying your application because you lied, and these are the reasons that we have as to write their contemporaneous with his interview. That didn't happen. In fact, what happened was just the opposite. What happened was this correspondence, and it's found in Exhibit G, Your Honor, Exhibit G, November 17, 1992. What, in fact, occurs is that the application is denied because there was a lack of communication. We have someone with about six years of schooling in his own country, and then he fails. So apparently what happened is that he filed an appeal to that denial of the application, challenging the determination under Section 312 of the Immigration and Nationality Act, and that is, is he really able to read and write? So I think that what we have is we have information being provided to an examiner. It's equivocal. What did he say? How did he say it? But if the examiner finds that he couldn't communicate with him and then turns and then denies the application solely for that reason, it seems somewhat disingenuous for us now to really say you purposely lied about this marriage in 86, and you only told us the one about 88, and it would be for an experienced individual filling out these applications. They would know that if you disclose that a child was born in 1986 towards the tail end of the year, the inquiry is going to be who's the mother? Let's take a look at that birth certificate, et cetera. And we know that from the application, that application was filled out by someone else. In October of 91, he appears before an INS officer? That is correct, for the interview. Yeah. With translation available or not? None, Your Honor. And the reason they went to INS? How did they communicate? I think that's the core. That question is at the core of the problem that we have here. If the officer denies, and I'm down withó You have two minutes. I'll continue, and I'll just finish with what I have then. I think that what we have here is we have an interview taking place in 1991, and the officer is making a decision that he can't communicate with the individual, and then later on we use that same communication, if you will, to deny the application, but we then bootstrap the factual findings that we have on that application, that there was a marriage in 1986. And the immigration judge, the defense lawyer, the trial attorney for the Immigration Service, no one probed, no one made an inquiry into that. Everyone just kind of went to the second and third page and went to the point where what was it that you put on this application? I think for purposes of 101F, subsection 6, on the determination of good moral character, I think that here we have the judge's decision. It's also one of the extras. The judge's decision grants this individual voluntary departure, and the standard to grant voluntary departure is that you have to use 101F, subsection 6, to screen if there's good moral character. How could you find on one hand that you're going to grant a voluntary departure and then turn around for 241H relief, turn around and say, well, you don't have it, as a matter of discretion I'm going to deny it? Well, sort of the other way around. You got a present involuntary departure after he found there was no good moral character. If you want to complain about the grant of voluntary departure because he wasn't eligible, I suppose you could do that. You're down to ten seconds. We'll give you ten seconds for rebuttal and maybe a little more. All right. Good morning. May it please the Court. I'm David Downheimer on behalf of the Respondent. Counsel, I want to start with one question. This petitioner was found ineligible not to have moral character under section 1101F6. Correct, Your Honor. Because he lied to a tribunal, meaning the officer taking these statements. He made a false statement under oath, Your Honor. He made a false statement. And the false statement is as follows. I asked him, were you married on February 21st, 1988? And he responded yes. That is one of the false statements, yes, Your Honor. What else? The record reveals that he was also asked the total number of times that he had been married, to which he responded one. He was also asked if he had the names of any of his prior wives, to which he responded none. Was that before the examiner? Yes, it was, Your Honor. On page 120, excuse me, on page 248 of the record, it shows the application for naturalization. The immigration inspector testified before the immigration court that what he did was put the petitioner under oath and then went through that application question by question, asking him each question and then checking them off as he responded. On page 125 of the record, it also indicates that if the section had been left blank, the immigration inspector would ask him that section and then also write down his response to that. For instance, how many times had you been married? And his response was one. And on the immigration application, it's noted there, as one of the corrections made, that he was only married one time. So that is an additional lie under oath. Could you tell me all the false statements so we can examine them? That's what I wanted to find out. One is that he said, were you in answer to the question, were you married on February 21st? Let's start with that one. And he responded, were you married on February 21st, 1988? And he responded, yes. If he responded no, would he have been lying? He was lying when he responded yes. But he also would have lied if he responded no, right? No, that would probably be a more accurate response, Your Honor, because the ceremony. It would not have been a lie if I said to Judge Hawkins two questions. One, were you married on the date you became a judge? And he answered yes to that. Would he be committing perjury if he had been married five years earlier? The date of the marriage? Well, I understand the question, Your Honor, but I think for purposes of the immigration interview, the question has to be put into context. He's asking, who is your wife? And he says, Lorna Sato. He asks, when were you married? And he answered. Well, that's not the questions, and that's not the context in which it was asked. The question is, well, that's not the context of the way the questions are in the hearing. But, number one, he was, in fact, married on that date in the sense that he was not single. Number two, he actually went to a marriage ceremony on that date. Yes, he did go to a marriage ceremony. And had he then, had you said to him, to a man who A, was married, and B, had gone to a marriage ceremony on a particular date, were you married on that date? And he had said no, he would have been concealing the fact that he went to a ceremony on that date, wouldn't he? Well, I think if you want to make a fine distinction, I would say that he would be actually answering truthfully because he was actually married two years before that, and he had a ceremony on that date of 1988. You know, you could understand the materiality and focus, et cetera, if the question had been, were you married on February 15, 1986, when the reaffirmation upon entry form was completed? I agree. Was he ever asked that? The record does not reveal that he was. However, the record- Was he ever asked, were you married at an earlier date? Well, essentially, yes, when he's asked, how many total times were you married? Well, yeah, how many total times were you married could be, did they say to the same person? Normally, if you're asked how many times were you married, you're talking about how many wives have you had or how many husbands have you had. No, because that's a separate question that comes next, Your Honor, where they ask could you list the names of any prior husbands or wives that you've had, and he says none. So you've never asked the same question more than one way? I mean, the question was not how many ceremonies have you gone through, it said how many times have you been married? Now, lots of people do go through more than one ceremony, a civil ceremony and a religious ceremony, and if a person who'd gone through two ceremonies were asked several years later how many times have you been married, that could mean either how many ceremonies have you gone through or how many people have you married. I agree, Your Honor, but then that means that if he's saying that he was married in 1988, then he should have said that he had been married twice. Well, he should have said a lot of things. I mean, he should have if he wanted to be completely honest, as you say, and forthcoming. But whether you can be convicted of perjury is a different question, as we've seen in the answers a number of people give to questions. People are not always totally forthcoming. They sometimes try to mislead people by the answers they give, such as some other agency said it, so I didn't really say we said it, or what it is. There are various ways people are not entirely forthcoming in the highest offices and not just one occupant of the office. People don't always give the answer that could answer precisely the question that's asked. But perjury before a judicial officer requires something more. It's not concealing, as the cases have said. I agree, Your Honor, but I believe when you look at his answers to all those questions in the record, it's clear that he was not just merely concealing or confused. He was actually providing false answers. Did there come a time in the interview process where he was confronted with the fact of the earlier civil ceremony? No, it wasn't known at that time that there was an earlier civil ceremony. Well, I'm making up the list of false statements. One is, were you married on 2-21-88? That's one. Correct. That the government cites two. The other one is, how many times have you been married? Correct. And the last one is, give the names of all your former wives or any former wives? Correct, and then there are two more, Your Honor, because the application goes on to ask how many times his wife had been married, to which he responded one. And any names of prior husbands of his wife, to which he responded none. That one's a little harder. Weren't those correct? Excuse me? Were they not correct answers there? They are correct if he lists his date of marriage as being 1986, but if he lists his date of marriage as being in 1988, they're incorrect, because he then would have had to have said that he had actually been married twice. You know, your leading case, I think you would probably agree, is Bernal's, the INS. That's correct, Your Honor. Contrast the questions that were asked here with what that opinion says that Mr. Bernal was asked. It says the officer noted that he claims no other wives, stating he was not married in either a religious or civil ceremony prior to immigrating to the U.S. in 1984. Now, if he had been asked that question, were you married in either a religious or civil ceremony prior to immigrating, and he said no, you'd have the same case you had in Bernal. That's correct, Your Honor. However, I would argue that his answers to those questions in the context that they were made shows that he was clearly providing false testimony for the purpose of receiving an immigration benefit. This isn't an instance where the immigrant was confused or didn't understand what he was doing, Your Honor. He came in December of 1985. He had a visa. No, I'm not saying he was confused. The question is, is the question such that the answer he gave is perjurious? We're talking about a statute that's false testimony before a tribunal, not a question of is somebody giving an answer that he knows will give the wrong impression. But did he commit perjury? Right. Under 106F6. Could he be imprisoned for what he said? The standard is whether he made a false statement under oath for the purpose of receiving an immigration benefit. Okay. That's perjury, isn't it? Well, it's the standard set out under INA 106F. Yes, but it does, in fact, qualify under the perjury statutes, under 1101, for example. It may, Your Honor. I'm from the precedent in the immigration courts. And also, if I could just note, because I see my time is running out, that Petitioner's argument that he didn't lie is a new one. In 15 July 1994, he filed a pre-hearing brief before the immigration court where he admitted that in his naturalization interview he made, quote, the same misrepresentation which he had made when he first entered the United States, end quote, and arguing that because he, quote, was in effect telling the same lie, end quote, he was still eligible for a waiver under the fraud section. He filed a sworn affidavit explaining that he was married in 86. He admitted in his testimony before the immigration judge that he understood the significance of being married prior to coming to the United States. That's at the record at 168. The board has stated in matter of tejum that the United States citizenship is a uniquely significant status and that the integrity of the naturalization process is a matter of profound importance, Your Honor. And this court should not countenance Petitioner's repeated manipulations of that process. Thank you, counsel. Thank you, Your Honor. Do you have anything to say in ten seconds? Only thank you for the opportunity to present this and just simply to point out to the court that the record of proceeding at page 247, albeit it is a copy of the application, but it does not have and it actually leaves a question for all of us. The naturalization examiner is required to use red ink to make the notations or changes on the application. Those notations we cannot see on this copy. And number two, if we go to the back of the application, it indicates the number of corrections that the officer made, one through 16. So when my opponent indicates that the applicant answered none, in fact, that if we look at page three of the application, those are the notes of the officer in red, which we can't discern from this copy here. Thank you. Thank you, counsel. Case just argued will be submitted.
judges: Reinhardt, Siler, Hawkins